# United States Court of Appeals for the Federal Circuit

---

**AMERGEN ENERGY COMPANY, LLC,** BY AND
THROUGH **EXELON GENERATION COMPANY, LLC,**
TAX MATTERS PARTNER,
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2014-5067

---

Appeal from the United States Court of Federal Claims in No. 1:09-cv-00108-LJB, Judge Lynn J. Bush.

---

Decided: March 11, 2015

---

PAUL MARCH SMITH, Jenner & Block LLP, Washington, DC, argued for plaintiff-appellant. Also represented by TERRI L. MASCHERIN, JOHN J. HAMILL, Chicago, IL.

ARTHUR THOMAS CATTERALL, Tax Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by RICHARD FARBER, GILBERT STEVEN ROTHENBERG, TAMARA W. ASHFORD.

B. JOHN WILLIAMS, JR., Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, for amicus curiae Entergy Corporation. Also represented by DAVID W. FOSTER.

---

Before LOURIE, MOORE, and CHEN, *Circuit Judges*.

LOURIE, *Circuit Judge*.

AmerGen Energy Company, LLC ("AmerGen"), by and through Exelon Generation Company, LLC, appeals from the decision of the United States Court of Federal Claims (the "Claims Court") granting summary judgment that AmerGen may not include future nuclear decommissioning liabilities that it assumed when it purchased three nuclear power plants in the basis of the acquired assets in its 2001 through 2003 tax returns. *AmerGen Energy Co. v. United States*, 113 Fed. Cl. 52 (2013) ("*Summary Judgment*"). The Claims Court reasoned that because those nuclear power plants would not be decommissioned until years later, AmerGen's decommissioning liabilities did not satisfy the economic performance requirement of 26 U.S.C. § 461(h) (2000).[1] *Id.* at 73.

We conclude that the Claims Court correctly decided that § 461(h) is applicable in determining when and whether an accrual method taxpayer, such as AmerGen, incurs future nuclear decommissioning liabilities for purposes of calculating the basis of an acquired nuclear power plant and associated assets. Because AmerGen did not economically perform the decommissioning activities at issue as of 2001 through 2003, the relevant tax years, we *affirm*.

---

[1] Title 26 of the United States Code is also referred to herein as "Internal Revenue Code" or "I.R.C."

BACKGROUND

In 1999 and 2000, AmerGen purchased three nuclear power plants, *viz.*, the Three Mile Island Unit-1 nuclear plant ("TMI-1"), the Clinton Power Station ("Clinton"), and the Oyster Creek Nuclear Generating System ("Oyster Creek"), and assumed responsibility for their operations. AmerGen paid a purchase price of $93 million for those plants and related assets. J.A. 507. According to AmerGen, it also assumed future decommissioning liabilities associated with each plant.

Operating a nuclear power plant within the United States requires a license from the Nuclear Regulatory Commission ("NRC"). *See* 42 U.S.C. § 2131. AmerGen applied for and obtained the NRC's approval of the transfer of the plants' operating licenses. As a licensee, AmerGen was subject to the regulations promulgated by the NRC, including the obligation to decommission its nuclear power plants after they would permanently cease operations. *See* 10 C.F.R. §§ 50.2, 50.82(a)(3).

None of the three nuclear power plants was decommissioned as of the relevant 2001 through 2003 tax years. The operating license for Oyster Creek was originally set to expire in 2009, and has since been extended to 2029. The operating license for TMI-1 was originally set to expire in 2014, and has also been extended to 2034. The operating license for Clinton will not expire until 2026, and may be extended to 2046. Under 10 C.F.R. § 50.82(a)(3), the process of decommissioning may take sixty years after a nuclear power plant permanently ceases operations. Thus, AmerGen might not fully satisfy its decommissioning obligations until 2106. *Summary Judgment*, 113 Fed. Cl. at 58.

Before AmerGen acquired the nuclear power plants, the prior owners had established qualified and nonqualified decommissioning trust funds in which they set aside money to pay for decommissioning in the future. A quali-

fied fund satisfies the requirements of I.R.C. § 468A and receives special tax treatment. A taxpayer's contribution to a qualified fund is subject to statutory limitations on the allowable amount of contributions as well as a "ruling amount" set by the Internal Revenue Service ("IRS"). *See* I.R.C. § 468A(b), (d) (2000). The contributions are currently deductible, and investment incomes are taxed at a fixed rate. *See id.* § 468A(a), (e) (2000). A nonqualified fund, however, does not have those tax advantages; in particular, contributions are not currently deductible, and earnings are taxed at a taxpayer's otherwise applicable rate.

While planning the purchase of the nuclear power plants, AmerGen was advised by its tax accountants that it was "unlikely" that the IRS would allow AmerGen "to include the assumed decommissioning liability in the basis of the assets acquired on the date of the purchase" because the economic performance requirement of Treas. Reg. § 1.461-1(a)(2)(i) would not "be met at the planned purchase date." J.A. 1238. The tax accountants further advised that, under the then-existing basis-allocation rules, the entire amount of cash consideration that AmerGen planned to pay would be allocated to the basis of transferred nonqualified funds, rather than to the basis of the nuclear power plants.[2] J.A. 1239.

AmerGen sought private letter rulings on the matter from the IRS. The IRS ruled that, at the time of pur-

---

[2] In 2004, the IRS promulgated a regulation that prospectively provides for an election that effectively allows purchasers of nuclear power plants to allocate basis to depreciable plants and equipment before allocating it to nonqualified funds. *See* Treas. Reg. § 1.338-6(c)(5). That regulation, however, does not apply here because AmerGen's acquisitions took place in 1999 and 2000, under the old basis-allocation rules.

chase, AmerGen would "not be entitled to treat as a component of its cost basis . . . any amount attributable to the future decommissioning liability" because AmerGen would not have performed any services relating to decommissioning and thus the liability would not be incurred for tax purposes under § 461(h). I.R.S. P.L.R. 200004040 (Oct. 29, 1999); I.R.S. P.L.R. 200034008 (May 18, 2000); I.R.S. P.L.R. 200037020 (June 9, 2000). The IRS also confirmed that AmerGen must allocate basis of the acquired assets under the then-existing basis-allocation rules. In addition, the IRS ruled that AmerGen would obtain a carry-over basis for qualified funds to be transferred to AmerGen, and those funds would remain qualified under § 468A.

AmerGen accordingly evaluated its planned acquisitions under the assumption that the decommissioning liabilities would not be added to the basis of the acquired assets at the time of purchase. J.A. 1880–81. AmerGen required the sellers to make additional contributions to their decommissioning trust funds prior to closing and then to transfer both qualified and nonqualified trust funds to AmerGen. According to AmerGen, it received a total of $974 million in transferred funds from the sellers, including $393 million in qualified funds and $581 million in nonqualified funds.[3] J.A. 503–04. AmerGen did not

---

[3] In 2005, Congress amended § 468A and eliminated certain statutory limitations on the allowable amount of contributions to a qualified fund. The 2005 amendment also permits a taxpayer maintaining a qualified fund to make a deductible catch-up contribution to that fund. I.R.C. § 468A(f)(1). In 2008, AmerGen transferred $454 million from its nonqualified funds to its qualified funds and deducted the entire $454 million on its 2008 return. J.A. 505, 3336.

contribute additional money of its own to those funds after the purchase. J.A. 505.

AmerGen filed its tax returns on a calendar-year basis using the accrual method of accounting. J.A. 58. On its amended tax returns for 2001 and 2002, and on its tax return for 2003, AmerGen claimed that, in addition to the $93 million it paid in purchase price, it assumed decommissioning liabilities in the amount of $2.15 billion that should be included in the basis of the acquired assets at the time of purchase, a position contrary to that of the IRS. J.A. 1236, 2944. According to AmerGen, the total basis of the acquired assets should be $2.24 billion rather than $93 million. With that basis adjustment, and the corresponding depreciation and amortization deductions and reduced amount of capital gains, AmerGen attempted to reduce its taxable income by more than $110 million per year. The IRS rejected AmerGen's request to include the assumed decommissioning liabilities in the basis of the acquired assets for its 2001 through 2003 tax returns.

In February 2009, AmerGen deposited $2.9 million with the IRS and then sued the United States in the Claims Court. J.A. 55. There, it changed the valuation of its decommissioning liabilities and instead claimed that it assumed decommissioning liabilities in the amount of $1.69 billion.[4] J.A. 507. AmerGen alleged that it should be allowed to include that amount in the basis of its

---

[4] According to AmerGen, of the $1.69 billion, $950 million was to fund future decommissioning required by the NRC. Appellant's Br. 10–11. The rest was to fund the management of spent nuclear fuel and site restoration not required by the NRC. *Id.* Moreover, the $1.69 billion figure reflects the entire estimated decommissioning obligation, with no reduction for the portion allocable to qualified funds, for which AmerGen has already received favorable tax treatment under § 468A. Appellee's Br. 20.

acquired assets at the time of purchase, *i.e.*, a total basis of $1.78 billion rather than $93 million, and that for 2001 through 2003, with the increased basis, it was entitled to claim (1) reduced capital gains recognized on the sale of securities in its nonqualified funds, (2) depreciation deductions of the nuclear power plants, (3) amortization of goodwill in the amount of $72 million per year, and (4) additional deductions based on a note receivable that AmerGen acquired from one of the sellers. J.A. 66–73.

The parties filed cross-motions for summary judgment. The Claims Court granted the government's motion and denied AmerGen's motion. The parties disagreed as to whether § 461(h) is applicable in calculating the basis of the purchased assets. The court agreed with the government and concluded that the plain text of the statute indicates that § 461(h) and its statutory "all events test" is "of general applicability and should be applied to determine *when* liabilities are incurred for the purpose of cost basis calculations." *Summary Judgment*, 113 Fed. Cl. at 63 (emphasis added). The court then considered the case law, the legislative history, and the relevant Treasury regulations, and found additional support for its reading of the plain statutory text. *Id.* at 64, 67, 69, 70.

The court considered whether AmerGen incurred the decommissioning liabilities at the time of purchase, specifically, whether at that time those liabilities satisfied the economic performance requirement of § 461(h). The court concluded that the timing rule of § 461(h)(2)(B) applies, under which economic performance occurs when AmerGen provides the required services, *i.e.*, decommissioning. *Id.* at 72. Because AmerGen would not decommission its nuclear power plants until years later, the court concluded that AmerGen did not incur the decommissioning liabilities and thus may not include them in the basis of the acquired assets at the time of purchase. *Id.* at 73.

The Claims Court entered final judgment in favor of the government. AmerGen timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

### DISCUSSION

We review the Claims Court's grant of summary judgment *de novo*. *Abbott Labs. v. United States*, 573 F.3d 1327, 1330 (Fed. Cir. 2009). Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Cl. R. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Issues of statutory interpretation are also reviewed *de novo*. *Qantas Airways Ltd. v. United States*, 62 F.3d 385, 387 (Fed. Cir. 1995). This appeal raises only issues of law and there is no genuine dispute concerning issues of fact.

I

I.R.C. § 1012 provides in relevant part that "[t]he basis of property shall be the cost of such property . . . ." The "cost of such property" is the "cost to the taxpayer." *Detroit Edison Co. v. Comm'r*, 319 U.S. 98, 102 (1943). A property's basis may be adjusted over time to reflect capital expenditures on the property, as well as exhaustion and wear and tear. I.R.C. §§ 1011, 1016.

In *Crane v. Commissioner*, 331 U.S. 1 (1947), the Supreme Court held that "the proper basis [of a property] is the value of the property, undiminished by mortgages thereon." *Id.* at 11. Subsequently, courts have extended the holding of *Crane* and determined that, under certain circumstances, the basis of an acquired asset includes, not only the purchase price, but also noncontingent liabilities assumed by the buyer or encumbering the asset. *See, e.g.*, *Denver & Rio Grande W. R.R. Co. v. United States*, 505 F.2d 1266, 1269 (Ct. Cl. 1974).

According to case law, a liability of a taxpayer using the accrual method of accounting is deemed incurred when all events have occurred that determine the fact of liability and the amount of that liability with reasonable accuracy. *See United States v. Anderson*, 269 U.S. 422, 441 (1926). In 1984, Congress enacted I.R.C. § 461(h), which provides in relevant part as follows:

> (h) Certain liabilities not incurred before economic performance.
>
> > (1) In general. *For purposes of this title*, in determining whether an amount has been incurred *with respect to any item* during any taxable year, the *all events test* shall not be treated as met any earlier than when economic performance with respect to such item occurs.
> >
> > . . .
> >
> > (4) All events test. For purposes of this subsection, the *all events test* is met *with respect to any item* if all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy.

I.R.C. § 461(h)(1), (4) (2000) (emphases added).

AmerGen argues that the economic performance requirement codified in § 461(h) is inapplicable in calculating the basis of purchased assets. According to AmerGen, purchase-price basis is governed by *Crane* and its progeny, which only require a liability to be noncontingent and definite. AmerGen asserts that the "all events test" is a term of art, and, according to the case law before 1984, the test only applied to expense deductions by an accrual method taxpayer, not to basis calculation. AmerGen contends that when Congress enacted § 461(h), it did not expand the scope of the "all events test"; it only added the

economic performance requirement. AmerGen also argues that because the "all events test" is not directed to a taxpayer using the cash method of accounting, the test is inapplicable to purchase-price basis calculation, which concerns both cash method and accrual method taxpayers.

The government responds that § 461(h) should be applied to determine when and whether a liability or cost is incurred for purposes of basis calculation. According to the government, the plain text of § 461(h)(1) makes clear that the economic performance rule is applicable to "any item" for "purposes of this title," *i.e.*, the Internal Revenue Code, and that the statute makes no reference to any pre-1984 "all events test." The government also argues that the test for determining whether a liability could be included in the basis of purchased assets (what AmerGen calls the "contingency" test under *Crane*) is substantively indistinguishable from the "all events test." The government also notes that Congress enacted both § 461(h) and § 468A in 1984 to address the issue of premature accrual of nuclear decommissioning liabilities and that AmerGen improperly seeks to circumvent this statutory scheme.

We conclude that § 461(h) is applicable in determining when and whether an accrual method taxpayer incurs nuclear decommissioning liabilities for purposes of calculating the basis of an acquired nuclear power plant and associated assets. First, § 461(h)(1) plainly states that it applies for all "purposes of this title," *i.e.*, the Internal Revenue Code, not just to a subset of tax provisions, such as specific deduction provisions. Second, the text of § 461(h)(1) and § 461(h)(4) specifies that they apply "with respect to any item" and thus the statutory "all events test" is not limited to expense deductions. Prior to 1984, there was no statutory "all events test," and Treasury regulations provided a two-prong "all events test" for determining when an *expense* was deductible for an accrual method taxpayer. Treas. Reg. § 1.461-1(a)(2) (1967). However, when Congress enacted § 461(h), it used

broader language, namely, "with respect to any item" of a liability. Thus, Congress not only added the economic performance requirement in § 461(h)(1), but also enacted a new and more inclusive "all events test" in § 461(h)(4) that is not limited to expense deductions by an accrual method taxpayer.

Moreover, we find AmerGen's argument that the term "all events test" in § 461(h) has certain historical limitations that preclude its application in calculating basis to be unavailing. As indicated, the plain text of § 461(h) shows that the "all events test" codified therein is applicable to "any item" of a liability. The cases cited by AmerGen do not establish that the test was necessarily limited to expense deductions. Notably, AmerGen itself argued to the Claims Court that courts have applied a two-prong "contingency" test similar to the pre-1984 regulatory "all events test" in determining whether a liability is includable in the basis of purchased assets. AmerGen's Cross-Motion and Supporting Memorandum for Summary Judgment at 20, *AmerGen Energy Co. v. United States*, No. 09-108T (Fed. Cl. June 19, 2012), ECF No. 53.

Section 461(h) allows taxpayers to account for a future liability for tax purposes *when* it is incurred, and thus allows AmerGen, an accrual method taxpayer, to recognize its nuclear decommissioning liabilities at the appropriate time. As Congress explained, taking into account estimated future liability currently "overstates the true cost." H.R. Rep. No. 98-432 pt. 2 at 1254 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 917. Here, AmerGen might not fully satisfy its nuclear decommissioning liabilities until 2106. The actual decommissioning process can take sixty years to complete after the plants cease operations, with costs incurred along that time frame. The interpretation of § 461(h) that AmerGen urges would create disparate treatment of taxpayers facing the same nuclear decommissioning liabilities. Thus, there is no

support for a conclusion that the economic performance rule applies only to taxpayers who build and retain plants, but not to those who buy and sell plants.

When Congress enacted § 461(h) in 1984, it also enacted § 468A and § 172(f) specifically for nuclear decommissioning costs. Those two provisions provide limited means for a nuclear power plant owner to alter the effect of the otherwise applicable timing rules of § 461(h). Under § 468A, contributions to qualified decommissioning funds are deductible at the time of contribution before decommissioning is economically performed; and, after economic performance occurs, a taxpayer may take additional deductions that are not previously accounted for as the taxpayer incurs decommissioning costs. I.R.C. § 468A(a), (c)(2) (2000). Section 468A, however, sets specific limits on the allowable amount of contributions to prevent excessive funding and to ensure level funding over the useful life of a plant. *Id.* § 468A(b), (d) (2000). In addition, § 172(f) provides a special net operating loss carry-back provision for nuclear decommissioning costs, under which a taxpayer, after it actually incurs nuclear decommissioning costs, may be able to carry back the loss to previous tax years. *See* I.R.C. § 172(f)(3) (certain nuclear decommissioning costs carried back to each of the taxable years during the period beginning with the taxable year in which the plant was placed in service and ending with the taxable year preceding the loss year).

The tax treatment that AmerGen now seeks would effectively circumvent that statutory scheme. AmerGen was advised before it purchased the plants that it could not accelerate the future decommissioning liabilities. It requested the sellers of the plants to increase the amount of their decommissioning funds before transferring both qualified and nonqualified decommissioning funds to AmerGen. After the purchase, AmerGen did not contribute additional money of its own to those funds, but instead sought to include the estimated decommissioning

costs in the basis of its acquired assets in order to make depreciation and amortization deductions.

We therefore agree with the Claims Court and conclude that § 461(h) is applicable in determining when and whether an accrual method taxpayer, such as AmerGen, incurs nuclear decommissioning liabilities for purposes of calculating the basis of acquired nuclear power plants and associated assets. AmerGen's future decommissioning liabilities must be deemed incurred under § 461(h) before they are includable in the basis of the purchased assets.

## II

Section 461(h)(2) sets specific timing rules on when economic performance is deemed to occur, and provides in relevant part as follows:

> (2) Time when economic performance occurs. Except as provided in regulations prescribed by the Secretary, the time when economic performance occurs shall be determined under the following principles:
>
> (A) Services and property provided to the taxpayer. If the liability of the taxpayer arises out of
>
>> (i) the providing of services to the taxpayer by another person, economic performance occurs as such person provides such services,
>>
>> (ii) the providing of property to the taxpayer by another person, economic performance occurs as the person provides such property, or
>>
>> . . . .
>
> (B) Services and property provided by the taxpayer. If the liability of the taxpayer requires the taxpayer to provide property or services,

> economic performance occurs as the taxpayer provides such property or services.

I.R.C. § 461(h)(2) (2000).

AmerGen argues, in the alternative, that, even if § 461(h) applies to basis calculation, economic performance of its decommissioning liabilities has already occurred. According to AmerGen, the controlling timing provision is § 461(h)(2)(A)(ii), not § 461(h)(2)(B), because it became obligated to incur decommissioning costs when the sellers conveyed the nuclear power plants. The government responds that § 461(h)(2)(A)(ii) is inapplicable, and instead § 461(h)(2)(B) governs, because AmerGen's decommissioning obligations arose out of the NRC licenses and regulations of state and local governments, not the transfer of assets from the sellers. The government argues, moreover, that economic performance occurs when decommissioning activities actually begin.

We agree with the government that § 461(h)(2)(A)(ii) is inapplicable in this case. On the present facts, it is § 461(h)(2)(B) that governs because the liabilities at issue are a service to be provided *by* the taxpayer, not a property provided or a service to be provided *to* the taxpayer. Under § 461(h), the economic performance of AmerGen's decommissioning liabilities occurs when AmerGen actually decommissions its nuclear power plants. Here, the future decommissioning activities are services that AmerGen would perform to satisfy the requirements of the NRC or state and local governments. *Cf.* Treas. Reg. § 1.461-4(d)(7) (example 1); H.R. Rep. No. 98-432 pt. 2 at 1255 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 918. Because all three nuclear power plants were in active use at the time of purchase, and none of them was decommissioned as of the relevant tax years, the decommissioning service obligations were not satisfied when the sellers conveyed the plants to AmerGen.

We have considered AmerGen's remaining arguments and find them unpersuasive. We therefore conclude that AmerGen did not incur the decommissioning liabilities and thus may not include those liabilities in the basis of the acquired assets.

## CONCLUSION

For the foregoing reasons, we conclude that AmerGen may not include future nuclear decommissioning liabilities that it assumed when it purchased the three nuclear power plants in the basis of the acquired assets in its 2001 through 2003 tax returns. As the Claims Court correctly interpreted and applied the relevant law to determine when and whether AmerGen incurred future nuclear decommissioning liabilities for purposes of calculating the basis of the acquired assets, and there are no genuine issues of material fact, we therefore affirm the decision of the Claims Court.

**AFFIRMED**